## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

GUY W. HEFFINGTON,

     *Plaintiff,*

vs.

    Case No. 17-1192-EFM

PAMELA PULEO; FREDERICK G.
SUNDHEIM, JR.; and OUGHTERSON,
SUNDHEIM & ASSOCIATES, P.A.,

     *Defendants.*

### MEMORANDUM AND ORDER

This case involves a dispute over the proper handling of the estate of Nyla June Heffington ("Nyla June"), Plaintiff Guy Heffington's grandmother. Heffington alleges that the attorney and law firm that prepared his grandparent's will and trust documents, along with the trustee of his grandmother's trust, conspired to convert his grandmother's assets for their own use and to deprive Heffington and his brother of their inheritance. Construed liberally, his Amended Complaint purports to advance constitutional, breach of fiduciary duty, conversion, negligence, and fraud claims.

Five motions are currently before the Court. Collectively, the Defendants have filed three motions to dismiss, Heffington has filed a motion to strike or stay the deadline for his response to Defendant Puleo's motions to dismiss, and Heffington has filed a motion to appoint

counsel.  The Court grants the Defendants' motions to dismiss (Docs. 14 & 16) for lack of

personal jurisdiction, and denies the remaining motions as moot (Docs. 6, 10, & 24).[1]

## I.      Factual and Procedural Background[2]

Nyla June and her husband, Charles Heffington, lived in West Islip, New York from

approximately 1952 until 1976.  After Charles retired in 1976, the couple moved to Florida.

While in Florida, Nyla June and Charles retained Frederick G. Sundheim, Jr., a resident of the

state of Florida and a partner at the Florida law firm Oughterson, Sundheim & Associates, P.A.,

to perform estate planning services.  In 2003, Sundheim prepared a will and a trust for Nyla June

and Charles.  Sundheim made periodic revisions to these documents through 2015.

Nyla June had one child, Mark Heffington, and two grandchildren, Plaintiff and his

brother, Grant.  At all relevant times, Nyla June's son and grandchildren resided in Kansas.  The

Joint Declaration of Trust executed in 2003 named Mark Heffington as successor trustee.  Mark

Heffington unexpectedly passed away in 2006.  Approximately five years later, in 2011, Charles

Heffington passed away.  In 2012, Nyla June moved back to New York to live with her life-long

best friend, Helen Puleo, and Helen's daughter, Pamela Puleo ("Puleo"), at Helen's house on

Ryan Street.

*2012 Amendment to Joint Declaration of Trust*

The first contested revision to Nyla June's estate plan occurred on March 1, 2012, prior

to Nyla June's move to New York.  Nyla June and Puleo met with Sundheim to revise Nyla

---

[1] Defendants Sundheim and Oughterson, Sundheim & Associates filed a motion to dismiss (Doc. 6) Heffington's Complaint.  Because Heffington subsequently filed an Amended Complaint (Doc. 12), this motion is moot.

[2] Drawing all reasonable inferences in favor of Plaintiff, the facts are taken from the Amended Complaint and its attached exhibits.

June's trust. Heffington asserts that although Nyla June had always intended to leave everything to her grandsons, Puleo had somehow convinced Nyla June to leave her Florida condo to Puleo. After this revision, Puleo moved Nyla June to New York to live with her ailing mother, Helen.

Around this time, Nyla June contacted Heffington's mother, Joan Farr, to inform Farr that Nyla June was moving to New York with the help of Puleo. This concerned Farr and she tried to contact Sundheim and his law firm by phone and e-mail to determine whether Nyla June had changed her estate plan. The law firm initially ignored her calls, but eventually called Farr and informed her that the firm could not provide any details about Nyla June's visit, but that Nyla June seemed to be in her right mind. Aside from returning Farr's phone call, no Defendant had any contacts with Farr, Heffington, or Kansas until late 2016 when Puleo mailed some of Nyla June's belongings to Heffington.

*2015 Amendment to Joint Declaration of Trust*

The second contested revision to Nyla June's estate plan occurred in early 2015. Heffington alleges that on February 9, 2015, Nyla June revised her trust to name Puleo as trustee. He attaches Exhibit B, the Fourth Amendment to Joint Declaration of Trust, as evidence. Exhibit B shows a revision to the provision titled "Trustee Succession." Exhibit B states that Nyla June "is now the sole trustee of the Joint Declaration of Trust," and states that "[i]f at any time both settlors shall die, resign, or be unable to manage their affairs, PAMELA PULEO shall become successor trustee . . . ." Heffington does not identify any contacts with Kansas or with residents of Kansas in relation to this revision.

*Additional events underlying Heffington's claims in this action*

Nyla June continued to live with Helen until she moved into an assisted living facility sometime in late 2016 or early 2017. On approximately April 9, 2017, Puleo called Heffington

and informed him that Nyla June was in the hospital and was not doing well. Puleo sent Heffington a check for $1,900 to cover airfare for him, his brother, and his mother to visit Nyla June. Puleo later stated that having that many people would be too much stress for Nyla June and that they should not come.

Heffington's mother spoke with Sundheim on Heffington's behalf on approximately April 13, 2017. Sundheim allegedly stated that Puleo had been appointed as trustee and, in reference to Nyla June's estate, said that if Puleo "spends the money down, there is nothing you can do." Sundheim also stated that Heffington and his brother had no right to see bank statements for Nyla June going back three years.

Heffington, his brother, and his mother had a conference call with Sundheim on April 20, 2017, wherein they learned that Nyla June had given her Florida condo to Puleo and that it had been sold. They also learned that in September of 2016, purportedly acting on behalf of Nyla June, Puleo purchased her mother's house on Ryan Street with $437,000 of Nyla June's money. Heffington's mother later learned that Puleo had transferred the deed to the Ryan Street house from Nyla June to herself on April 21, 2017. During the conference call with Sundheim, Puleo sent a text message to Heffington asking why he did not believe her. Farr subsequently called Puleo and told her to only contact Heffington by e-mail.

Heffington and his brother flew to New York on April 21, 2017, to visit Nyla June. Puleo paid for the brothers' hotel room, purchased them jackets, and purchased their meals during their stay—purportedly in an effort to be-friend them and make them believe she would distribute their inheritance money properly as trustee. On April 24, 2017, Nyla June passed away in Suffolk County, New York.

-4-

*Administration of Nyla June's estate*

On May 2, 2017, an employee of Oughterson, Sundheim & Associates sent a copy of Nyla June's will and trust via e-mail to Heffington's brother—neither grandson had previously seen these documents. Heffington's review of the trust showed that Sundheim put all of Nyla June's assets in the trust so that Puleo could control the assets as trustee in New York. Puleo did not understand the legalities of serving as trustee, and Sundheim and his law firm purportedly directed Puleo's actions as trustee.

Farr sent Puleo copies of outstanding bills Heffington's brother owed, and Puleo sent each brother a check for $8,000. Farr e-mailed Sundheim and requested a copy of the inventory accounting for Nyla June's estates at the time of her death, and although Sundheim said they were working on an accounting, he did not send one. Heffington's brother was told that Puleo and Sundheim were waiting for the house to sell before providing a final accounting of the assets in Nyla June's estate.

Heffington alleges that Puleo breached her fiduciary duty by purchasing Puleo's family home, fraudulently deeding it to herself on April 21, 2017, and trying to sell the home to pocket the proceeds. He asserts breach of fiduciary duty claims against all Defendants alleging that they conspired together to illegally convert the assets in Nyla June's estate for their own benefit and use by paying themselves excessive administrative and legal fees, failed to provide annual accountings, failed to provide a final accounting at the time of Nyla June's death, failed to timely file Nyla June's will and trust with the New York court, converted property for their own use and benefit, wasted Heffington's inheritance money prior to Nyla June's passing, failed to act ethically in the beneficiaries' best interests, acted negligently as trustee and executor, and violated his due process and equal protection rights.

Heffington does not allege that Nyla June ever lived in Kansas, or owned any property or assets located in Kansas. Rather, Nyla June's only connection to Kansas is that her only child and grandchildren lived in Kansas, and until her son's death in 2006, she visited Kansas every year. After her son's death, however, she ceased visiting or communicating with Heffington, his brother, and his mother. Heffington currently resides in Derby, Kansas, and has lived in Kansas for all times relevant to this lawsuit.

Heffington does not allege that Puleo or Sundheim have ever set foot in Kansas, or had any contact with Kansas aside from sporadic mail, phone, and e-mail communications. He asserts that Puleo resides in New York and Sundheim resides in Florida. Likewise, Heffington does not allege that Oughterson, Sundheim & Associates does business in Kansas, or otherwise has any contacts with Kansas beyond what has been described above. He asserts that the law firm has its primary offices in Florida.

## II.    Legal Standard

A plaintiff opposing a motion to dismiss based on lack of personal jurisdiction bears the burden of showing that jurisdiction over the defendant is appropriate.[3] In a pretrial motion to dismiss, when the matter is decided on the basis of affidavits and written materials, the plaintiff is only required to make a prima facie showing that personal jurisdiction is proper to avoid dismissal.[4] Once the plaintiff makes a prima facie showing, the defendant must "present a

---

[3] *Thermal Components Co. v. Griffith*, 98 F. Supp. 2d 1224, 1227 (D. Kan. 2000) (citing *Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996)).

[4] *Id.*

compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.' "[5]

"The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits."[6]  "However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true."[7]  "The plaintiff has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading."[8]

### III.    Analysis

**A.    The Court lacks Personal Jurisdiction over the Defendants**

"Where a federal lawsuit is based on diversity of citizenship, the court's jurisdiction over a nonresident defendant is determined by the law of the forum state."[9]  The party seeking to establish personal jurisdiction over a diverse litigant must make two showings: (1) that jurisdiction is legitimate under the state's long-arm statute, and (2) that jurisdiction does not offend the Due Process Clause of the Fourteenth Amendment.[10]  The Kansas Supreme Court has interpreted Kansas' long-arm statute to extend jurisdiction to the fullest extent allowed by the

---

[5] *Id*. at 1227 (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998)).

[6] *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (internal quotations omitted).

[7] *Id*. (citations omitted).

[8] *Id*. at 1508 (quoting *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989)).

[9] *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011).  Although Heffington amended his Complaint to assert violations of his constitutional rights, those claims are subject to summary dismissal because private actors cannot violate an individual's due process or equal protection rights, and Heffington has failed to allege that any Defendant acted under color of law.  *See Browns v. Mitchell*, 409 F.2d 593, 594 (10th Cir. 1969).

[10] *Kuenzle*, 102 F.3d at 455.

Due Process Clause of the Fourteenth Amendment.[11]  Thus, in this case, the Court need not conduct a statutory analysis apart from the due process analysis.[12]

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.' "[13]  "Due process requires both that the defendant 'purposefully established minimum contacts with the forum State' and that the 'assertion of personal jurisdiction would comport with fair play and substantial justice.' "[14]  "[A]n out-of-state defendant's contacts with the forum state may give rise to either general (all-purpose) jurisdiction or specific (case-linked) jurisdiction."[15]

### 1.    General Jurisdiction

General jurisdiction allows the Court to "exercise jurisdiction over an out-of-state party for all purposes."[16]  "'Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts.' "[17]  Accordingly, general

---

[11] *Merriman v. Crompton Corp.*, 282 Kan. 433, 146 P.3d 162, 179 (2006).

[12] *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010).

[13] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)).

[14] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (quoting *Burger King*, 471 U.S. at 476).

[15] *Id*. (citations omitted).

[16] *Id*.

[17] *Id*. at 904 (quoting *Benton v. Cameco Corp.*, 375 F.3d 1070, 1080 (10th Cir. 2004)).

jurisdiction is only proper when a party's "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State."[18]

Heffington argues that general jurisdiction is proper based on his grandmother's contacts with Kansas.  He argues that "Nyla June continued to call and send cards to plaintiff and his brother after his father died which justifies a finding of 'systematic, continuous or substantial contacts.' "[19]  Further, he claims that his mother attempted to contact Nyla June and Oughterson, Sundheim & Associates in 2012, and that everyone largely ignored her calls until Oughterson, Sundheim & Associates finally returned a call but then "purposely never told her anything about the contents of the will and trust."

Heffington does not allege that any Defendant has ever stepped foot in Kansas, conducted business in Kansas, or had any regular or ongoing contact with Kansas of the nature that would support a finding of general jurisdiction.  Indeed, many of the "contacts" Heffington identifies are attributed to his grandmother and not to any of the Defendants in this case.  Heffington has wholly failed to identify contacts by any Defendant of the continuous and systematic nature required to support a finding of general jurisdiction.  Accordingly, if personal jurisdiction exists at all over the Defendants, it is under specific and not general jurisdiction.

### 2.    *Specific Jurisdiction*

Specific jurisdiction allows the Court to exercise jurisdiction over an out-of-state defendant "only if the cause of action relates to the party's contacts with the forum state."[20]

---

[18] *Am. Fidelity Assurance Co. v. Bank of N.Y. Mellon*, 810 F.3d 1234, 1238 (10th Cir. 2016) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

[19] Doc. 32, pp. 10-11.

[20] *Old Republic*, 877 F.3d at 904 (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014)).

Courts evaluating whether specific jurisdiction exists engage in a two-step inquiry. First, the Court asks "whether the plaintiff has shown that the defendant has minimum contacts with the forum state."[21] If so, the Court proceeds to the second inquiry, and asks "whether the defendant has presented a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.' "[22] Here, the Court need not analyze the second inquiry because Heffington's failure to satisfy the first inquiry is dispositive.

In the specific jurisdiction context, the minimum contacts test "requires, first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities.' "[23] The "purposeful direction" requirement ensures that "an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state."[24] Indeed, the relationship between the defendant and the forum must arise out of contacts that the "*defendant himself*" created with the forum—i.e. the analysis must focus on "the defendant's contacts with the forum" and not merely the defendant's contacts "with persons who reside there."[25]

A plaintiff may employ several frameworks to satisfy the "purposeful direction" requirement.[26] Here, Heffington relies on the "harmful effects" framework established by the

---

[21] *Id*. (citation omitted).

[22] *Id*. (quoting *Burger King*, 471 U.S. at 476-77).

[23] *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008) (quoting *Burger King*, 471 U.S. at 472).

[24] *Id*. at 1071 (quoting *Burger King*, 471 U.S. at 475).

[25] *Walden v. Fiore*, 134 S. Ct. 1115, 1122-23 (2014) (emphasis in original).

[26] *See, e.g.*, *Old Republic*, 877 F.3d at 905.

U.S. Supreme Court in *Calder v. Jones*.[27]  In *Calder*, the Court found specific jurisdiction over Florida defendants that published an allegedly libelous article about a California resident.  The defendants had numerous contacts with California: they relied on phone calls with California sources to obtain information for the article, they wrote about the plaintiff's activities in California, they caused reputational injury in California by publishing an article widely circulated in California, and the brunt of the injury was suffered in California.  California was "the focal point both of the story and of the harm suffered."[28]

The *Calder* effects test allows a plaintiff to satisfy the "purposeful direction" requirement "when an out-of-state defendant's *intentional* conduct targets and has substantial harmful effects in the forum state."[29]  The Tenth Circuit has summarized this test to require "(a) an intentional action . . . , that was (b) expressly aimed at the forum state . . . , with (c) knowledge that the brunt of the injury would be felt in the forum state."[30]  This test requires "more than simply harm suffered by a plaintiff who resides in the forum state."[31]  Indeed, "the plaintiff cannot be the only link between the defendant and the forum."[32]  Rather, the defendant's conduct must connect the

---

[27] 465 U.S. 783 (1984).  Based on the contacts Heffington identifies, he properly focuses on the *Calder* effects test as the alternative frameworks clearly do not apply.

[28] *Id*. at 789.

[29] *Old Republic*, 877 F.3d at 907 (citing *Calder*, 465 U.S. at 790-91) (emphasis in original).

[30] *Id*. (quoting *Dudnikov*, 514 F.3d at 1072).

[31] *Id*. at 917 (citing *Walden*, 134 S. Ct. at 1125).

[32] *Id*. (quoting *Walden*, 134 S. Ct. at 1122).

defendant "to the forum in a meaningful way."[33]  "[M]ere foreseeability of causing an injury in the forum state is . . . insufficient."[34]

         a.     Defendants Sundheim and Oughterson, Sundheim & Associates

Heffington's only allegations connecting Sundheim and his law firm to Kansas consist of phone calls with the law firm initiated by Heffington or his family, and the firm's action of forwarding estate documents via e-mail to Heffington's brother after Nyla June's passing.  These contacts do not establish that Sundheim and his law firm "purposefully established minimum contacts with" Kansas sufficient to exercise personal jurisdiction over them.

Defendants' phone calls with Heffington are not "'sufficient in themselves to establish minimum contacts.' "[35]  Indeed, "[t]elephone contacts lack constitutional significance under the minimum contacts doctrine due to the geography-defying nature of twenty-first century telephone communications."[36]  Likewise, sending one e-mail containing a copy of estate planning documents also lacks constitutional significance.  Although the Tenth Circuit has not enunciated a bright-line rule for how many communications may constitute minimum contacts,[37] in *Far West Capital*, the Tenth Circuit found that far more substantial contacts—both in quality and quantity—than those alleged here were insufficient to establish minimum contacts.[38]

---

[33] *Walden*, 134 S. Ct. at 1125.

[34] *Dudnikov*, 514 F.3d at 1077.

[35] *Loeffelbein v. Rare Medium Grp., Inc.*, 2003 WL 23484636, at *4 (D. Kan. 2003) (quoting *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995)).

[36] *Proud Veterans, LLC v. Ben-Menashe*, 2014 WL 791200, at *8 (D. Kan. 2014).

[37] *Loeffelbein*, 2003 WL 23484636, at *4.

[38] *Far W. Capital*, 46 F.3d at 1077 (finding that the defendant's phone calls and ten to twenty faxes and letters sent over the course of contract negotiations were insufficient to establish minimum contacts).

Here, the parties' contacts were sporadic at best, and in almost every instance initiated by Heffington or his mother. There is no meaningful connection between Sundheim, his law firm, this litigation, and Kansas, and neither Defendant purposefully directed its activities at residents of Kansas. Indeed, Heffington does not allege that Sundheim—or anyone within his law firm— even knew that the beneficiaries of Nyla June's trust resided in Kansas, let alone that Sundheim or his firm reached out to Kansas in a constitutionally significant manner.[39] Accordingly, the Court concludes that Heffington has not asserted sufficient facts to make a prima facie showing that personal jurisdiction is proper as to Sundheim or his law firm.

      b.     Defendant Puleo

Heffington identifies the following contacts between Puleo and Kansas: Puleo sent some of Nyla June's belongings to the Heffingtons in the fall of 2016 (around the time when Nyla June went to live in an assisted living), called Heffington's family in April 2017 to inform them that Nyla June was ill, sent a check to the Heffingtons for airfare to visit Nyla June before her passing, sent a distribution from the trust to Heffington and his brother, and had a handful of phone and text exchanges with Heffington and his family. Although Puleo has had more contacts with Kansas than the other Defendants, the Court finds that Puleo's contacts with Kansas similarly fail to satisfy the minimum contacts requirement.

Almost every Court to address the issue has held that an out-of-state trustee of an out-of-state trust is not subject to personal jurisdiction in a forum simply because a beneficiary resides

---

[39] *Cf. Newsome v. Gallacher*, 722 F.3d 1257, 1280-81 (10th Cir. 2013) (holding that out-of-state attorney working from an out-of-state office on an out-of-state matter did not purposefully avail himself of the laws and privileges of his client's home forum where the attorney did not reach out to the client's home forum to solicit the client's business).

in the forum.[40]  For example, the U.S. District Court for the District of Colorado has refused to

exercise personal jurisdiction over a Kansas trustee simply because a beneficiary of the trust

resided in Colorado.[41]  In *Janney*, a beneficiary residing in Colorado filed a lawsuit against a

Kansas trustee pursing claims for conversion, breach of fiduciary duty, and unjust enrichment,

and requesting the court appoint a receiver, order the trustee to provide an accounting, and

remove the defendant as trustee.  There, the settlors of the trusts resided in Kansas at the time of

their deaths, the trustee resided in Kansas and administered the trusts from Kansas, and the trusts

provided that questions of construction and administration shall be determined under the laws of

the state where the trust is administered.[42]  In finding that specific jurisdiction did not exist, the

Court recognized that "Colorado's relationship to the events that give rise to this lawsuit is based

on nothing more than the mere fortuity that [a beneficiary] happens to reside here, which is a fact

insufficient in itself to create personal jurisdiction over a nonresident defendant."[43]

---

[40] *See, e.g.*, *McVickar v. Pavis-Rounds*, 2015 WL 566989 (D. Mass. 2015) (finding no personal jurisdiction over out-of-state trustee where only connection with the forum state was two beneficiaries resided in the forum and felt the effects of the breach of fiduciary duty in the forum); *Thomas v. Thomas*, 2015 WL 12681311 (C.D. Cal. 2015) (holding no personal jurisdiction over out-of-state trustee where contacts were limited to phone, mail and e-mail communications with beneficiary); *Schneider v. Cate*, 405 F. Supp. 2d 1254 (D. Colo. 2005) (finding no personal jurisdiction over Wyoming trustee where only connection with Colorado was that a beneficiary residing in Colorado felt the economic impact of alleged torts in Colorado); *Battig v. Lombardo*, 2000 WL 1847575 (D. Or. 2000) (refusing to exercise personal jurisdiction over an out-of-state trustee); *Dreher v. Smithson*, 986 P.2d 721 (Or. Ct. App. 1999) (finding trustees did not purposefully direct their activities toward an Oregon beneficiary—trustees' agreement to serve as successor trustees with knowledge that beneficiary resided in Oregon, trustees' correspondence and telephone calls to and from Oregon beneficiary, and trustees' distribution of checks to beneficiary in Oregon were insufficient contacts); *Popper v. Podhragy*, 48 F. Supp. 2d 268 (S.D.N.Y. 1998) (holding no personal jurisdiction over trustee where beneficiary alleged conversion of trust property but merely sustained financial loss or residuary pain in forum state).  *But see Seijo v. Miller*, 425 F. Supp. 2d 194 (D.P.R. 2006) (finding personal jurisdiction existed over trustee where grantor of trust was domiciled in Puerto Rico at time of death, the income beneficiary resided in Puerto Rico when the trust was established and at all other relevant times, the trustee made disbursements to Puerto Rico, and the claims arose out of the trustee's allegedly improper disbursements sent to Puerto Rico).

[41] *Janney v. Janney*, 2009 WL 1537895, at *4 (D. Colo. 2009).

[42] *Id.*

[43] *Id.* (citing *Far W. Capital*, 46 F.3d at 1079).

In accordance with *Janney*, and the vast majority of courts that have addressed similar circumstances, this Court concludes that the sparse and insignificant contacts alleged here are insufficient to establish the minimum contacts necessary to exercise personal jurisdiction over Puleo. Nyla June had her will and trust prepared by a Florida law firm when she was a resident of Florida, the trust states that its validity and interpretation are subject to Florida law, and Nyla June did not own property or other assets located in Kansas, rather all assets identified by Heffington are located in either New York or Florida. Further, Puleo has administered the trust from New York. Puleo simply does not have the requisite contacts with Kansas for this Court to exercise personal jurisdiction over her in this matter.

Heffington has failed to demonstrate purposeful actions by any Defendant sufficient to establish "meaningful contacts, ties, or relations" with Kansas. Indeed, no action underlying Heffington's claims took place in Kansas, and the only relation between the Defendants, this case, and Kansas is the fact that Heffington and his brother reside in Kansas and felt the economic impact of Defendants' alleged actions in Kansas. Unlike *Calder*, Kansas is not the focal point of the alleged actions and Defendants' contacts with Kansas are constitutionally insignificant. Accordingly, Heffington has failed to make a prima facie showing that personal jurisdiction is proper here. Because the Court may not exercise personal jurisdiction over any Defendant, the Court grants Defendants' motions to dismiss for lack of personal jurisdiction.[44]

### 3. *Personal Jurisdiction versus Diversity Jurisdiction*

Heffington mistakenly argues that because *diversity* jurisdiction is present, it is not necessary that *personal* jurisdiction also be present. The presence of diversity jurisdiction,

---

[44] Because the Court grants the Defendants' motions on the basis of lack of personal jurisdiction, it is unnecessary to decide and the Court declines to address the remaining issues presented in the Defendants' motions.

however, only satisfies the requirement that the Court have *subject matter jurisdiction*—i.e. authority over the claims in the suit. Personal jurisdiction exists where the Court has authority over the parties to the suit. Courts must have both subject matter and personal jurisdiction, and the presence of diversity jurisdiction is irrelevant to the question of whether personal jurisdiction exists. Here, no Defendant has waived personal jurisdiction, and for the reasons stated above, Heffington has failed to make a prima facie showing that personal jurisdiction is proper as to any Defendant. Because a Court must have both subject matter jurisdiction and personal jurisdiction to entertain a case, and because the Court does not have personal jurisdiction over any Defendant, Heffington's claims are dismissed.

**B.    Heffington's Motions are Denied as Moot**

Since the Court lacks personal jurisdiction over the Defendants in this case, it is unnecessary to address Heffington's motion for appointment of counsel. Thus, Heffington's motion for appointment of counsel is denied as moot. Likewise, Heffington's motion to strike, or in the alternative, motion to stay his response to Puleo's motion to dismiss is denied as moot. Not only has the Court granted Puleo's motion to dismiss, but Heffington filed a response to Puleo's motion, mooting his request to stay the deadline for filing his response to this motion.

**IV.    Conclusion**

Heffington has failed to make a prima facie showing that personal jurisdiction is proper as to any Defendant. Accordingly, Defendants' motions to dismiss Heffington's Amended Complaint are granted, and Heffington's claims against the Defendants are dismissed. Because the Court is dismissing Heffington's claims for lack of personal jurisdiction, it does not opine on the merits of the parties' remaining contentions. The Court further concludes that Plaintiff's pending motions are moot in light of the Court's holding regarding personal jurisdiction.

-16-

**IT IS THEREFORE ORDERED** that Defendants Sundheim, Jr. and Oughterson, Sundheim & Associates, P.A.'s Motion to Dismiss Amended Complaint (Doc. 14) and Defendant Puleo's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 16) are **GRANTED** on personal jurisdiction grounds.

**IT IS FURTHER ORDERED** that Defendants Sundheim, Jr. and Oughterson, Sundheim & Associates, P.A.'s Motion to Dismiss (Doc. 6) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Appointment of Counsel (Doc. 10) and Motion to Strike; or in the Alternative, Motion to Stay his Response to Defendant Puleo's Motion to Dismiss (Doc. 24) are **DENIED** as moot.

**IT IS SO ORDERED**.

Dated this 2nd day of February, 2018.


_Eric F. Melgren_
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE